## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

| | |
|---|---|
| DAWN HARDIN and<br>HARRY HARDIN, | CIVIL COMPLAINT |
| Plaintiff, | |
| | CASE NO.3:18-cv-00052 |
| v. | |
| FELDMAN & STERN, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

NOW comes DAWN HARDIN ("Dawn") and HARRY HARDIN ("Harry") (collectively, "Plaintiffs"), by and through their attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of FELDMAN & STERN, LLC, ("Defendant"), as follows:

### NATURE OF THE ACTION

1.  Plaintiffs bring this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.*, the Indiana Deceptive Consumer Sales Act ("IDCSA") under Ind. Code § 24-5-0.5 *et seq.*, and Intentional Infliction of Emotional Distress for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the FDCPA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Southern District of Indiana and a substantial portion the events or omissions giving rise to the claims occurred within the Southern District of Indiana.

**PARTIES**

4.   Dawn and Harry are 38 and 40 year old natural persons, respectively, residing at 3344 State Route 62 East, Boonville, Indiana, which falls within the Southern District of Indiana.

5.   Plaintiffs are "person[s]" as defined by 47 U.S.C. §153(39).

6.   Defendant is a third party debt collection agency with its registered agent, Anthony S. Beshere, located at 152 Hattaway Drive, Altamonte Springs, Florida.

7.   Defendant is a "person" as defined by 47 U.S.C. §153(39).

8.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

9.   Approximately two years ago, Harry visited Boonville Chiropractic ("Boonville") in order to obtain medical treatment.

10. Subsequently, Harry fell behind on his monthly payments owed to Boonville, which caused him to incur debt ("subject consumer debt").

11. Harry made a payment to Boonville to lower the total balance owed to approximately $150.00.

12. In March 2018, Harry and Dawn began receiving calls from Defendant, seeking to collect upon the subject consumer debt.

13. Many of Defendant's calls have been placed to Harry's employer's phone number, which was never supplied to Boonville by Plaintiffs.

14. More specifically, Defendant has contacted different divisions within Harry's employer, and has informed Harry's co-workers to have Harry return its calls.

15. Upon answering one of Defendant's calls while at work, Harry was greeted by an individual named "Richard Evans."

16. Richard Evans notified Harry that he owed approximately $400.00 for the subject consumer debt, and that if Harry did not make payment immediately, he would be sued for the balance.

17. Harry demanded that Defendant stop contacting him, especially while he was at work.

18. Despite Harry's demands, Defendant has continued calling his employer's phone number up until the date of the filing of this action.

19. When Harry's employer does not answer Defendant's calls, Defendant has left Harry messages on his employer's phone, demanding that Harry return its calls.

20. Due to Defendant's incessant phone calls to Harry's workplace, Harry was reprimanded by his employer on at least one occasion.

21. In addition to calling Harry's employer, Defendant has also been contacting Dawn on Plaintiffs' cellular phone number, (812) XXX-1828.

22. At all times relevant to the instant action, Plaintiffs were the sole subscribers, owners, and operators of the cellular phone ending in 1828. Both Dawn and Harry are and always have been financially responsible for the cellular phone and its services.

23. Plaintiffs never received a dunning notice or any type of correspondence whatsoever from Defendant, despite residing at the same residence for nearly 6 years.

24. Upon answering Defendant's calls, Dawn has also been greeted by the same individual named Richard Evans, who stated that he was calling on behalf of Defendant.

25. Upon speaking with Defendant, Richard Evans notified Dawn that he was collecting upon the subject consumer debt owed to Boonville.

26. During this call, Richard Evans informed Dawn that if Plaintiffs did not make a payment immediately, Defendant would obtain a court summons and serve Plaintiffs with a lawsuit.

27. Due to the fact that the balance owed on the subject consumer debt was less than half the amount Defendant was seeking to collect upon, as well as the fact that Dawn felt threatened by Defendant's comments considering she was not even responsible for the subject consumer debt, Dawn demanded that Defendant stop calling Plaintiffs' cellular phone.

28. In spite of Dawn's demands, Defendant has continued calling Plaintiffs' cellular phone up until the present day.

29. When Plaintiffs have neglected to answer Defendant's calls, Defendant has left voice messages on Plaintiffs' cellular phone, failing to disclose its business name, but demanding that Plaintiffs return Defendant's call at phone number (800) 483-9077.

30. Upon information and belief, the above phone number ending in 9077 is regularly utilized by Defendant during its debt collection activity.

31. In its voice messages, Defendant has even demanded that Dawn return its calls, despite the fact that she does not owe on the subject consumer debt.

32. Due to the harassing behavior Plaintiffs were being subjected to, Dawn even reached out to Boonville to inquire about Defendant.

33. Boonville informed Dawn that another phone number belonging to Defendant was (800) 769-7401 and that Defendant's manager is an individual named "Ron Thomas."

4

34.   Upon information and belief, the above phone number ending in 7401 is regularly utilized by Defendant during its debt collection activity.

35. When Plaintiffs would attempt to return Defendant's phone calls at the phone numbers (800) 483-9077 and (800) 769-7401, they have been greeted by "Office Suites," but upon asking for Defendant, including its representatives Richard Evans and Ron Thomas, they were transferred through to Defendant.

36. In all of Plaintiffs' communications with Defendant and its representatives, Defendant never identified itself to Plaintiffs as a debt collector nor did it apprise Plaintiffs of their legal rights.

37. Defendant has also placed multiple phone calls to Harry's workplace and Plaintiffs' cellular phone during the same day, despite being told to stop calling.

38. In sum, Defendant has regularly contacted Plaintiffs not less than 10 times in a span of one week, despite being told by Plaintiffs to stop calling.

39. Defendant's endless harassment gave Plaintiffs no choice but to contact their attorneys regarding their rights, resulting in expenses.

40. Plaintiffs have been unfairly and unnecessarily harassed by Defendant's actions.

41. Plaintiffs have suffered and continue to suffer emotional distress, mental anguish, and anxiety as a direct result of the unlawful collection practices of Defendant.

42. Defendant's harassing phone calls have severely disrupted Plaintiffs' daily life and general well-being.

43. Dawn has been unduly inconvenienced and harassed by Defendant's unlawful attempts to collect upon a debt for which she has no obligation.

44. Harry has been reprimanded at work by his employer as a result of Defendant's incessant phone calls to Harry's employer.

45. Plaintiffs have suffered concrete harm as a result of Defendant's actions, including but not limited to, invasion of privacy, aggravation that accompanies collection telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of their telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on their cellular phone, and diminished space for data storage on their cellular phone.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(DAWN & HARRY AGAINST DEFENDANT)

46. Plaintiffs repeat and reallege paragraphs 1 through 45 as though full set forth herein.

47. Plaintiffs are "consumer[s]" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

48. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

49. Defendant is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

50. The subject consumer debt which Defendant was attempting to collect upon is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

### a.   Violations of the FDCPA §§1692b(2)-(3) and §1692c(b)

51. The FDCPA, pursuant to §1692b(2), states that any debt collector "communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt."  §1692b(3) further prohibits communicating "with such person more than once unless requested to do so by such person or

unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information."   Also, pursuant to §1692c(b), "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

52. Defendant violated §1692b(2), b(3), and c(b) when it repeatedly contacted Dawn, a non-debtor, in an attempt to collect upon the subject consumer debt allegedly owed by Harry. Defendant informed Dawn that Harry owed a debt and Defendant attempted to extract payment from her.  By repeatedly contacting Dawn thereafter, even leaving voice messages on Plaintiffs' cellular phone including her name, Defendant was contacting and attempting to collect upon a third party who has no obligation on the subject consumer debt.

53. Not only does Dawn have no obligation on the underlying debt, but both she and Harry demanded that Defendant stop contacting them.  Despite their multiple pleas, Defendant continued its harassing conduct towards Harry by contacting him at his workplace, and also maintained its relentless phone calls to Dawn as well.

**b.  Violations of FDCPA §1692c(a)(1) and §1692d**

54. The FDCPA, pursuant to 15 U.S.C. § 1692c(a)(1), prohibits a debt collector from communicating with a consumer "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer…"

55. 15 U.S.C. §1692d prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." §1692d(5) further prohibits, "causing a telephone to ring or engaging any person in

telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

56. Defendant violated §1692c(a)(1), d, and d(5) when it continuously called Plaintiffs despite being told to stop calling. Defendant repeatedly called Harry's workplace, even though Harry told Defendant to stop calling him, especially while he was at work. Yet, Defendant continued its incessant behavior and repeatedly contacted Harry's employer. Defendant knew that it was contacting Harry at a time known to be inconvenient, as evidenced by the fact that Defendant has left voicemails to different departments within Harry's place of employment after being told by Harry to stop calling him at work. Moreover, even after Dawn and Harry expressed their desires to no longer be contacted, Defendant continuously contacted Plaintiffs' cellular phone and even threatened Plaintiffs with a lawsuit if payment was not immediately made. This type of behavior would cause any consumer to feel harassed, or at minimum, annoyed, but Defendant consciously engaged in this behavior with the intent to harass Plaintiffs into submission.

57. Pursuant to § 1692d(6), "The placement of telephone calls without meaningful disclosure of the caller's identity," is a violation of the FDCPA.

58. Defendant violated this provision of the FDCPA by leaving voice messages with Harry's employer and on Plaintiffs' cellular phone, and failing to identify its business name on those messages. Defendant simply requested a call back at a designated phone number, leaving Plaintiffs feeling confused and vulnerable.

   c. **Violations of FDCPA § 1692e**

59. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

8

60. In addition, this section enumerates specific violations, such as:

"The false representation of the character, amount, or legal status of any debt." 15 U.S.C. §1692e(2)(A).

"The threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5)

"The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).

"The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14).

61. Defendant violated § 1692e(2)(A) by misrepresenting the amount of the subject consumer debt.  Harry owed approximately $150.00 on the subject consumer debt, but Defendant notified Plaintiffs that the balance on the underlying debt was more than double the amount that Harry actually owed.  Defendant failed to provide Harry with any correspondence or dunning notice explaining the charges, and instead, Defendant simply attempted to threaten and harass Plaintiffs into paying an amount that was grossly disproportionate to the actual balance.

62. Defendant's conduct was in violation of § 1692e(5) when it threatened both Dawn and Harry with lawsuits if they failed to immediately make a payment.  The subject consumer debt was for approximately $150.00, so Defendant had no intention of filing a lawsuit, but Defendant still threatened to serve Plaintiffs with a summons.  Defendant engaged in this behavior to instill fear into Plaintiffs and to ultimately extract payment from them, albeit through illegal means.

63. Defendant violated e(10) when it used deceptive means to collect and/or attempt to collect the subject consumer debt.  When Plaintiffs have not answered Defendant's phone calls, it has left them voice messages requesting a call back at a designated number.  Plaintiffs were confused by these messages and Defendant neglected to identify its true business name in these voice messages in order for Plaintiffs to ultimately return its calls.  In addition, Defendant falsely notified Plaintiffs

that the balance owed on the subject consumer debt was an incorrect amount, and also falsely threatened Plaintiffs with a lawsuit it had no intention of carrying out.  Finally, by repeatedly contacting Dawn, despite the fact that she had no obligation on the subject consumer debt as well as the fact that she demanded that it stop calling, Defendant deceptively indicated that it had the lawful ability to contact her, even though it had no right to do so under the law.

64. Defendant's use of the name "Office Suites" is in violation of § 1692e(14) of the FDCPA. Plaintiffs were provided with two different phone numbers belonging to Defendant, however, upon calling both phone numbers, Plaintiffs are greeted by Office Suites, which is not the true name of Defendant's business.

### d.   Violations of FDCPA § 1692f

65. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

66. Defendant violated §1692f when it unfairly and unconscionably attempted to collect on a debt by misrepresenting the rights of Plaintiffs, by threatening Plaintiffs with a lawsuit which it has no intention of filing, by persistently contacting Dawn, a non-debtor, in an attempt to collect upon the subject consumer debt, and by contacting Harry's employer on a daily basis despite Harry's demands that it stop.  Defendant's conduct goes well beyond the bounds of decency and the unfair nature of its behavior is self-evident.   Attempting to coerce Plaintiffs into payment by using the aforementioned and non-exhaustive list of tactics is unfair and unconscionable behavior. These means employed by Defendant only served to worry and confuse Plaintiffs.

### e.   Violations of FDCPA § 1692g

67. The FDCPA, pursuant to 15 U.S.C. § 1692g requires a debt collector to, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt . . .

send the consumer a written notice containing" several pieces of information, including: "(1) the amount of the debt; (2) the name [of the original creditor]; (3) a statement [regarding disputing the debt within 30 days]; (4) a statement [outlining what happens if a consumer disputes a debt]; and (5) a statement that, upon written request . . . the debt collector will provide the consumer with the name and address of the original creditor . . . ."

68. Defendant violated 15 U.S.C. § 1692g by failing to provide the required disclosures to Harry. Plaintiffs have resided at the same address for nearly six years but have never received any correspondence from Defendant.  As such, Defendant has deprived Plaintiffs of their fundamental rights under the law, in violation of § 1692g.

69. As pled in paragraphs 38 through 45, Plaintiffs have been harmed and suffered damages as a result of Defendant's illegal actions.

WHEREFORE, Plaintiffs, DAWN HARDIN and HARRY HARDIN, respectfully request that this Honorable Court enter judgment in their favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.  Awarding Plaintiffs statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c.  Awarding Plaintiffs actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d.  Awarding Plaintiffs costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e.  Enjoining Defendant to cease contacting Plaintiffs; and

f.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (DAWN & HARRY AGAINST DEFENDANT)

70.  Plaintiff repeats and realleges paragraphs 1 through 69 as though fully set forth herein.

11

71.  Defendant violated I.C. 24-5-0.5-3(a) and (b)(19) by engaging in an unfair, abusive and deceptive practice through its systematic collection efforts towards Plaintiff.

72.  The IDCSA states:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227." I.C. 24-5-0.5-3(b)(19).

73.  Plaintiffs are "person[s]" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

74.  Defendant is a "supplier" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(3).

75.  Defendant's collection calls to Plaintiffs were "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

76.  Defendant engaged in unfair, abusive, and deceptive behavior in its transactions with Plaintiffs.  Defendant deceptively obtained the phone number for Harry's employer and proceeded to call that number on a regular basis, despite being told to stop.  Defendant also threatened Plaintiffs with a lawsuit and mischaracterized the amount of the debt, while failing to apprise Plaintiffs of their legal rights.  Upon information and belief, Defendant engages in this conduct on a systematic and frequent basis, knowing that consumers are unlikely to be aware of their rights and susceptible to sustained pressure.

77.  The IDCSA states:

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as

12

> a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. 24-5-0.5-4(a)(1)(2).

78. Although unsuccessful, Plaintiffs made attempts to correct Defendant's deceptive acts by demanding that it cease contacting them. However, Defendant's conduct is an incurable deceptive act of which notice would not remedy. Harry notified Defendant's representative to stop calling him, especially while he was at work. Moreover, upon calling Plaintiffs' cellular phone, Defendant was notified by Dawn to cease contacting her and her husband. At that point, Defendant had ample knowledge to know that it should no longer contact Plaintiffs. Nevertheless, Defendant continued to regularly contact Harry while he was at work, and its contacts even persisted to Plaintiffs' cellular phone. This illustrates Defendant's artifice with intent to mislead Plaintiffs, as the sole reason why Defendant would unlawfully contact Plaintiffs after being told to stop would be to mislead Plaintiffs into submission in order to ultimately collect payment from them.

79. Upon information, Defendant conducts the above described behavior on a wide and frequent basis. This behavior is extremely unfair and abusive, and goes against the state's goal of preventing the phone from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious.

80. In addition to inhibiting Plaintiffs' time and energy, as pled in paragraphs 38 through 45, Plaintiffs have suffered damages as a result of Defendant's unlawful practices. Plaintiffs are entitled to relief pursuant to I.C. 24-5-0.5-4(a)(1)(2).Plaintiff is entitled to relief pursuant to I.C. 24-5-0.5-4(a)(1)(2).

WHEREFORE, Plaintiffs, DAWN HARDIN and HARRY HARDIN, respectfully request that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiffs damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);

c. Awarding Plaintiffs costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);

d. Enjoining Defendant to cease contacting Plaintiffs; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (DAWN & HARRY AGAINST DEFENDANT)

81.   Plaintiffs restate and reallege paragraphs 1 through 80 as though fully set forth herein.

82. "To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Cangemi v.Advocate S. Suburban Hosp*., 364 Ill. App. 3d 446, 470, 845 N.E.2d 792, 813, 300 Ill. Dec. 903 (2006).

83. Defendant intentionally engaged in extreme and outrageous conduct when it incessantly attempted to intimidate and coerce Plaintiffs into making payments via threats and harassment carried out during the phone calls to Harry and Dawn.

84. Defendant knew that its relentless phone calls and threatening language would inflict severe emotional distress upon Plaintiffs.  Threatening Plaintiffs with a lawsuit is inherently frightening and would cause an ordinary consumer to feel extremely threatened and vulnerable, especially in conjunction with the fact that Plaintiffs were never apprised of their legal rights or a dunning notice.

85. Defendant also mysteriously obtained Harry's employer's phone number and called his employer on a daily basis, despite Harry notifying Defendant to ceases its contacts.  This deliberate conduct of unremittingly harassing Plaintiffs is indicative of Defendant's intent to inflict emotional distress upon Plaintiffs.  Defendant knew that its conduct would cause Plaintiffs to suffer severe emotional distress, which was its intention, as frightening Plaintiffs would likely force them into making a payment.

86. Defendant's conduct was beyond all possible bounds of decency, was atrocious and utterly intolerable in a civilized society.

87. Defendant's threats were designed to instill fear and emotional distress upon Plaintiffs.

88. As pled in paragraphs 38 through 45, Plaintiffs were severely damaged by Defendant's conduct.

WHEREFORE, Plaintiffs, DAWN HARDIN and HARRY HARDIN, respectfully request that this Honorable Court enter judgment in their favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiffs their actual damages in an amount to be determined at trial;

c.  Awarding Plaintiffs punitive damages in an amount to be determined at trial;

d.  Enjoining Defendant to cease contacting Plaintiffs; and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: March 19, 2018                                  Respectfully submitted,

s/ Nathan C. Volheim                                   s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. #6302103                       Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff                                  Counsel for Plaintiff
Admitted in the Southern District of Indiana           Admitted in the Southern District of Indiana
Sulaiman Law Group, Ltd.                               Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200                    2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                                Lombard, Illinois 60148
(630) 568-3056 (phone)                                 (630) 581-5858 (phone)
(630) 575-8188 (fax)                                   (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                               thatz@sulaimanlaw.com